Slip Op. 10–118

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **NSK BEARINGS EUROPE LTD.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant, and<br><br>**THE TIMKEN COMPANY,**<br><br>Defendant-Intervenor. |

**Before: Timothy C. Stanceu, Judge**

**Court No. 10-00289**

## OPINION AND ORDER

[Denying plaintiffs' motion for injunction against liquidation of entries subject to administrative review of antidumping duty order]

Dated: October 15, 2010

*Crowell & Moring LLP* (*Matthew P. Jaffe*, *Alexander H. Schaefer*, *Robert A. Lipstein*) for plaintiffs NSK Bearings Europe Ltd., NSK Europe Ltd., and NSK Corporation.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*L. Misha Preheim*); *Shana Hofstetter*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Stewart and Stewart* (*Geert M. De Prest*, *Terence P. Stewart*, *William A. Fennell*, and *Lane S. Hurewitz*) for defendant-intervenor.

Stanceu, Judge: Plaintiffs NSK Bearings Europe Ltd., NSK Europe Ltd., and NSK

Corporation (collectively, "NSK" or "plaintiffs") brought this action to contest a final

determination of the U.S. Department of Commerce ("Commerce" or the "Department"),

published as *Ball Bearings & Parts Thereof From France, Germany, Italy, Japan, & the United*

*Kingdom: Final Results of Antidumping Duty Administrative Reviews, Final Results of Changed-Circumstances Review, & Revocation of an Order in Part*, 75 Fed. Reg. 53,661 (Sept. 1, 2010) ("Final Results").  Plaintiffs bring a single claim challenging as unlawful the use of the Department's "zeroing" methodology to calculate a weighted-average dumping margin for NSK Bearings Europe Ltd., under which U.S. sales of ball bearings and parts thereof from the United Kingdom ("subject merchandise") at prices above normal value are deemed to have individual dumping margins of zero rather than negative margins.[1]  Compl. ¶¶ 5, 10-13.  Plaintiffs claim that the "Department's zeroing methodology by excluding negative margins from offsetting positive comparisons has led to an inaccurate calculation of the weighted-average margin for NSK."  *Id.* ¶ 10.  They move for a preliminary injunction against liquidation of the entries of merchandise produced or exported by NSK Bearings Europe Ltd. that were affected by the administrative review of the antidumping duty order on subject merchandise from the United Kingdom, as provided in Section 516A(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(c)(2) (2006).  Mot. for Prelim. Inj. ("Pls. Mot.").  Defendant and defendant-intervenor oppose the motion, arguing that plaintiffs' challenge to the Department's zeroing methodology has no likelihood of success on the merits and that the injunction plaintiffs seek would not be in the public interest.  Def.'s Opp'n to Pls.' Mot. for a Prelim. Inj. ("Def. Opp'n") 1-5; The Timken

---

[1] To calculate a weighted-average dumping margin in an administrative review, the U.S. Department of Commerce ("Commerce" or the "Department") first determines two values for each entry of subject merchandise falling within the period of review: the normal value and the export price ("EP") (or the constructed export price ("CEP") if the EP cannot be determined). 19 U.S.C. § 1675(a)(2)(A)(i) (2006).  Commerce then determines a margin for each entry by taking the amount by which the normal value exceeds the EP or CEP.  19 U.S.C. §§ 1675(a)(2)(A)(ii), 1677(35)(A).  If normal value does not exceed EP or CEP, Commerce assigns a value of zero, not a negative value, to the entry.  Finally, Commerce aggregates these values to calculate a weighted-average dumping margin.  19 U.S.C. § 1677(35)(B).

Co.'s Opp'n to the Mot. of NSK for a Prelim. Inj. ("Def.-Intervenor's Opp'n") 5-8.  The court

concludes that plaintiffs have failed to demonstrate any likelihood that they will succeed on the

merits of their claim and, on the basis of that conclusion, denies the motion for an injunction

against liquidation.

## I. BACKGROUND

On June 24, 2009, Commerce initiated administrative reviews of antidumping duty orders

on ball bearings and parts thereof, for the period from May 1, 2008 through April 30, 2009

("period of review").  *Initiation of Antidumping & Countervailing Duty Administrative Reviews*

*& Requests for Revocation in Part*, 74 Fed. Reg. 30,052 (June 24, 2009).  On April 28, 2010, the

Department published preliminary results of the administrative reviews.  *Ball Bearings & Parts*

*Thereof From France, Germany, Italy, Japan, & the United Kingdom: Preliminary Results of*

*Antidumping Duty Administrative Reviews, Preliminary Results of Changed-Circumstances*

*Review, Rescission of Antidumping Duty Administrative Reviews in Part, & Intent to Revoke*

*Order in Part*, 75 Fed. Reg. 22,384 (Apr. 28, 2010).  The Department published the Final Results

on September 1, 2010, determining an antidumping duty margin of 10.04% for NSK Bearings

Europe Ltd.  *Ball Bearings & Parts Thereof From France, Germany, Italy, Japan, & the United*

*Kingdom: Final Results of Antidumping Duty Administrative Reviews, Final Results of Changed-*

*Circumstances Review, & Revocation of an Order in Part*, 75 Fed. Reg. 53,661, 53,662 (Sept. 1,

2010) ("*Final Results*").  On September 17, 2010, plaintiffs filed their summons, and on

September 23, 2010, their complaint, motion for preliminary injunction and memorandum in

support thereof.  Summons; Compl.; Pls. Mot.; Mem. in Supp. of Mot. of NSK Ltd., NSK

Corporation, and NSK Precision America, Inc. for Prelim. Inj. ("Pls. Mem.").[2]  Defendant and

defendant-intervenor filed their oppositions to plaintiffs' injunction motion on September 29,

2010 and October 4, 2010, respectively.  Def.'s Opp'n; Def.-Intervenor's Opp'n.  On October 8,

2010, plaintiffs moved for leave to file a reply.  Mot. for Leave to File a Reply in Supp. of Mot.

for Prelim. Inj.

## II. DISCUSSION

The court is granted subject matter jurisdiction by Section 201 of the Customs Courts Act

of 1980, 28 U.S.C. § 1581(c), to adjudicate plaintiffs' claim contesting the Final Results.

In ruling on plaintiffs' motion for preliminary injunctive relief, the court must consider as

factors whether the movant is likely to succeed on the merits, whether the movant will suffer

irreparable harm if the relief is not granted, whether the balance of the hardships tips in the

movant's favor, and whether a preliminary injunction will not be contrary to the public interest.

*See Belgium v. United States*, 452 F.3d 1289, 1292 (Fed. Cir. 2006) (quoting *U.S. Ass'n of*

*Importers of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1346 (Fed. Cir.

2005).  "No one factor, taken individually, is necessarily dispositive."  *FMC Corp. v. United*

*States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

Defendant and defendant-intervenor argue that plaintiffs have no likelihood of succeeding

on the merits of their claim because the U.S. Court of Appeals for the Federal Circuit ("Court of

Appeals") repeatedly has sustained Commerce's application of the zeroing methodology in

administrative reviews.  Def.'s Opp'n 3 (citing *Koyo Seiko Co. v. United States*, 551 F.3d 1286

---

[2] Plaintiffs incorrectly titled their memorandum in support of their motion with the wrong party names. The court assumes plaintiffs meant to refer to the parties in this action, NSK Bearings Europe Ltd., NSK Europe Ltd., and NSK Corporation.

(Fed. Cir. 2008); *SKF USA, Inc. v. United States*, 537 F.3d 1373 (Fed. Cir. 2008); *NSK Ltd. v. United States*, 510 F.3d 1375 (Fed. Cir. 2007); *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007)); Def.-Intervenor's Opp'n 5 ("As NSK appears to acknowledge, however, the Court of Appeals for the Federal Circuit has indicated that it will affirm the Department's zeroing practice 'until Commerce officially abandons the practice pursuant to the specified statutory scheme.'") (citing Pls. Mem. 6 (citing *NSK Ltd.*, 510 F.3d at 1380)).  According to the argument defendant and defendant-intervenor make in opposing the injunction, plaintiffs are unable to distinguish the issue presented in this case from the binding precedent established and repeatedly reaffirmed by the Court of Appeals.

Plaintiffs insist that this case is distinguishable from all past cases upholding the Department's zeroing practice because of two recent developments, under which that practice, as applied in antidumping administrative reviews, has been rejected in decisions resulting from dispute resolution proceedings conducted under the North American Free Trade Agreement ("NAFTA") and the World Trade Organization ("WTO").  Pls. Mem. 5-6.  Plaintiffs' argument is, essentially, that their claim challenging the use of zeroing in the Final Results presents novel issues not previously considered by the Court of Appeals or this court.  Plaintiffs cite, first, a recent NAFTA binational panel decision that predated the issuance of the Final Results, *Stainless Steel Sheet and Strip in Coils From Mexico: Final Results of 2004/2005 Antidumping Review, Decision of the Panel*, USA-MEX-2007-1904-01, at 24 (Apr. 14, 2010) ("Stainless Steel from Mexico").  Pls. Mem 5; Compl. ¶ 11.  Plaintiffs describe the panel decision as holding that the Department's zeroing practice violates the U.S. antidumping statute and as remanding a 2004-2005 administrative review for recalculation of a respondent's dumping margin.  Pls. Mem 5;

Compl. ¶ 11.  Plaintiffs argue that, in response to the NAFTA panel decision, "the agency should

have similarly recalculated the final results of the 2008-2009 ball bearing reviews to eliminate

this practice" and that "[t]he agency's failure to do so constituted an arbitrary and capricious act

as the agency was preparing to unlawfully treat like cases differently."  Pls. Mem. 5.

      Citing developments in the World Trade Organization ("WTO"), plaintiffs argue, further,

that the "Department has acknowledged the WTO's conclusions that the U.S. practice of zeroing

in administrative reviews is unlawful, and further has indicated its intent to comply with the

WTO's decision."  Compl. ¶ 11 (citing Appellate Body Report, *United States - Measures*

*Relating to Zeroing and Sunset Reviews*, ¶¶ 137, 156, 165 and 185, WT/DS322/AB/R (Jan. 9,

2007); Appellate Body Report*, United States - Laws, Regulations and Methodology for*

*Calculating Dumping Margins ("Zeroing")*, WT/DS294 (Apr. 18, 2006).  Plaintiffs report that

"the U.S. Government recently agreed to fully comply with the WTO's zeroing ruling, as the

United States and European Union suspended proceedings before the WTO arbitration panel that

had been scheduled to decide on September 8, 2010, how much retaliation the European Union

could impose on U.S. trade" and that the "United States plans to begin the process of complying

with the WTO's zeroing ruling before the end of the year."  Pls. Mem. 5-6 (citing "U.S., EU

Reach Deal To Suspend Arbitration Proceedings In Zeroing Case," *Inside US Trade*, Sept. 10,

2010, at 1).

      As plaintiffs' NAFTA-related argument assumes, the issue of the effect on U.S. law of a

decision of a NAFTA binational panel disallowing zeroing was not before the Court of Appeals

in the previous cases upholding the Department's practice of zeroing in administrative reviews.

But however novel that issue may be, the court finds no merit in plaintiffs' arguments that, as a

result of a remand ordered by the NAFTA panel, Commerce was obligated by law to recalculate

the Final Results to eliminate zeroing and is acting contrary to law in arbitrarily and capriciously

preparing to treat like cases differently.  Section 411 of the North American Free Trade

Agreement Implementation Act ("NAFTA Implementation Act"), 19 U.S.C. § 1516a(g), requires

Commerce to implement the decision of the NAFTA panel, and neither the panel's decision nor

the Department's implementation of it may be reviewed on any question of law or fact by any

court of the United States.  19 U.S.C. § 1516a(g)(2)(B), (g)(7)(A).  The court fails to see how

Commerce can be said to be acting unlawfully in preparing to treat like cases differently where,

as here, by statute it would appear to lack discretion to do anything but implement Stainless Steel

from Mexico and yet unquestionably has statutory authority, recognized repeatedly by the Court

of Appeals, to apply its zeroing practice in administrative reviews other than the one that was the

subject of the NAFTA panel's decision.  The future inconsistency to which plaintiffs allude

would not result from a decision by Commerce to treat like cases differently that, upon judicial

review, would be set aside as an arbitrary and capricious agency action.  Instead, it would be a

consequence of the statutory scheme established by 19 U.S.C. § 1516a(g) and related provisions,

under which NAFTA binational panel decisions may reach results inconsistent with those of U.S.

courts and yet are not reviewable by U.S. courts.

      Nor can it plausibly be argued that the NAFTA panel's decision will require this court to

conclude that Commerce lacked the discretion under the antidumping law to apply zeroing in the

Final Results.  The NAFTA Implementation Act provides that a final decision of a NAFTA

binational panel is not binding precedent in an action brought in the Court of International Trade

under 19 U.S.C. § 1516a(a), although the court "may take" such panel decision "into

consideration." 19 U.S.C. § 1516a(b)(3).  In this case, the court's taking the NAFTA binational

panel decision into consideration could be of no avail to plaintiffs.  Any "consideration" of the

panel decision could not overcome the precedent binding on the court, under which Commerce

has statutory authority to apply the zeroing methodology when conducting an administrative

review under 19 U.S.C. § 1675.  *See*, *e.g.*, *NSK Ltd. v. United States*, 510 F.3d at 1380 (stating

that "Commerce's zeroing practice is in accordance with our well-established precedent.").

Plaintiffs' citation to a press report that the United States will comply with the WTO's

zeroing ruling and plans to begin the process of complying with that ruling before the end of this

year is also unavailing.  The salient point is that the United States, as of the September 1, 2010

publication date of the Final Results, had not begun the process of discontinuing Commerce's

practice of zeroing in response to the actions taken by the WTO.  That process is governed

generally by the Uruguay Round Agreements Act ("URAA"), which in Section 123 established a

procedure for implementing in U.S. law a WTO decision that a regulation or practice of a U.S.

agency is inconsistent with one of the agreements implemented by the URAA.  *See* 19 U.S.C.

§ 3533(g); *Corus Staal BV*, 395 F.3d at 1349.  To effectuate a change of agency regulation or

practice due to an adverse WTO ruling, Section 123 provides for a process involving the United

States Trade Representative, Congress, the relevant agency, private sector advisory committees,

and the public, a process that culminates in a final rule or other modification.  *See* 19 U.S.C.

§ 3533(g)(1).  By statute, any action the United States takes to comply with the WTO's decision

on zeroing in administrative reviews will not apply retroactively to the Final Results.  Among

other procedures, the statute directs that the agency regulation or practice not be rescinded or

modified before the agency has published its proposed modification for public comment.  *Id.*

§ 3533(g)(1)(C).[3]

In summary, plaintiffs have instituted this action in reliance on NAFTA- and WTO-

related developments that fail to support their claim that Commerce unlawfully applied zeroing

in the administrative review that was completed by the Final Results on September 1, 2010.  As

of that date, it was well established in U.S. law, through repeated and consistent holdings of the

Court of Appeals, that the practice of zeroing is statutorily permissible in administrative reviews,

and neither of the international developments to which plaintiffs direct the court's attention can

result in a change in U.S. law that will apply retroactively.  The court concludes that plaintiffs

have not demonstrated any likelihood that they can succeed on the merits of their claim.

The irreparable harm factor is strongly in plaintiffs' favor.  Plaintiffs have shown that

they will be immediately and irreparably harmed absent the injunctive relief they seek.  As they

correctly argue, "because liquidation of the entries at issue would deprive NSK of its right to

meaningful judicial review of the Department's Final Results, NSK is faced with immediate and

irreparably [sic] injury absent injunctive relief."  Pls. Mem. 3.  Liquidation of the entries at issue

in this litigation in accordance with the Final Results would preclude any relief plaintiffs might

obtain with respect to those entries, and, in so doing, might moot entirely the claim plaintiffs

assert in this litigation.

---

[3] The Uruguay Round Agreements Act ("URAA") also established a procedure in Section 129, providing for the implementation of an adverse WTO panel or Appellate Body report that addresses a particular antidumping determination by Commerce.  *See* 19 U.S.C. § 3538.  Even were a Section 129 procedure to be initiated now or in the near future, it could not apply to entries made prior to a date on which the United States Trade Representative directs the Department to implement the WTO decision and, therefore, could have no effect on judicial review of the Final Results.  *See id*. § 3538(c)(1)(B).

The "balance of the hardships" factor also favors plaintiffs.  While the denial of an

injunction prevents plaintiffs from obtaining any favorable result of judicial review as to the

affected entries and may well moot the entire case, defendant suffers no hardship from the grant

of the injunction.  If the injunction is granted, the government, which already is in possession of

security in the form of antidumping duty cash deposits, would be in a position to collect, with

interest, any additional duties determined to be owing, once a judicial decision in this litigation is

final and conclusive.

Concerning the "public interest" factor, the court concludes that a grant of the injunction

plaintiffs seek would not be *contrary* to the public interest, but that no public interest

consideration is sufficient to outweigh the serious deficiency affecting the claim on the merits.  It

is, of course, in the public interest that the entries at issue in this litigation be liquidated in

accordance with the correct result on the merits, but in this case plaintiffs cannot show any

prospect that they could succeed in contesting that result as set forth in the Final Results.  The

sought injunction would remain in place not only throughout a proceeding conducted according

to USCIT Rule 56.2 but also throughout all appeals.  Due to plaintiffs' inability to demonstrate

any prospect of success, the court concludes that the public interest in this case will be better

served if the liquidation process, as it would be conducted in the ordinary course, is not

disturbed.

The strong showing plaintiffs are able to make on irreparable harm and balancing of the

hardships are not sufficient to overcome the lack of any prospect of success on the merits.  In

reaching this conclusion, the court is mindful that the denial of the injunction motion may well

moot plaintiffs' case.  However, the court is guided by the principle that an injunction against

liquidation of entries pursuant to 19 U.S.C. § 1516a(c)(2) should not be ordered without at least a

showing that the issue presented is not "so clear-cut as to warrant disposing of this appeal,"

*Belgium*, 432 F.3d at 1295, a showing plaintiffs are unable to make in support of their motion.

### III. CONCLUSION AND ORDER

The court will deny plaintiffs' motion for a preliminary injunction against liquidation

because plaintiffs have failed to demonstrate any likelihood of success on the merits of the sole

claim they advance in this litigation.

### ORDER

Upon consideration of plaintiffs' Motion for Preliminary Injunction, plaintiffs'
memorandum in support thereof, Defendant's Opposition to Plaintiffs' Motion for a Preliminary
Injunction, The Timken Company's Opposition to the Motion of NSK for a Preliminary
Injunction, plaintiffs' Motion for Leave to File a Reply in Support of Motion for Preliminary
Injunction, and all other papers and proceedings herein, it is hereby

**ORDERED** that plaintiffs' Motion for Leave to File a Reply in Support of Motion for
Preliminary Injunction be, and hereby is, GRANTED; and it is further

**ORDERED** that plaintiffs' Motion for Preliminary Injunction be, and hereby is,
DENIED.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: October 15, 2010
       New York, New York